# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JEI SOLUTIONS, INC. | * | CIVIL ACTION |
| VERSUS | * | NO. 19-156 |
| BURLINGTON INSURANCE COMPANY | * | SECTION "L" (1) |

## ORDER AND REASONS

Before the Court is Defendant's motion for judgment on the pleadings or summary judgment (R. Doc. 10). Plaintiff opposes (R. Doc. 12). Having considered the parties' briefs and the applicable law, the Court now issues this Order and Reasons.

I.     **BACKGROUND**

Peerless hired JEI as contractor to renovate a certain New Orleans building, and JEI subcontracted the entire scope of the work to Ja'Lia Construction, LLC. Before the project was completed, Peerless unilaterally terminated the contract and filed an arbitration demand against JEI, seeking damages for faulty workmanship. Ultimately, an adverse judgment was rendered against JEI for $89,239.25. In this lawsuit, JEI seeks to recover that amount from Burlington, its commercial general liability insurer, plus interest, defense costs, and bad faith penalties.

*a. Peerless's Arbitration Demand*

Peerless's original Demand for Arbitration, filed on February 3, 2017, stated only that the nature of the dispute was "Breach of Contract" against JEI. R. Doc. 10-5. Burlington denied coverage and defense on the grounds that an alleged breach of contract does not constitute an "occurrence" to trigger coverage under the policy. R. Doc. 12-3 at 9.

Months later, in September 2017, Peerless amended its Arbitration Demand and alleged as

follows:

- In November 2014, the visible work on the outside of the 4-plex immediately showed numerous problems with the workmanship of JEI, including but not limited to the painting of the outside of the 4-plex and the poor appearance of the outside of the 4-plex resulting from the inadequate and incomplete work of JEI.

- By December 8, 2014, the incomplete and inadequate work done by JEI to correct the appearance of the outside of the 4-plex was extremely disturbing and became the source of the City of New Orleans' Code Enforcement Citation.

- By June 2015, a walkthrough of the building revealed that the project was not near completion and that the work performed was substandard and inadequate. Some examples of this include: rotted, weathered, or termite damaged studs were still present; some studs on the first floor were not connected to the ceiling or floor beam; outside boards were coming loose from the building; some floors were not stable; there were places where you could see outside from the inside (through the siding); there were places where the ground could be seen through openings in the floor; there was a window coming away from the wall; and nails from the inside were visible, penetrating the outside boards.

- In June 2015, Peerless hired an outside firm to review and assess the project. The report was submitted to JEI, and on June 12, 2015, a meeting was held between Peerless, JEI, and the consulting contractor.

- Additionally, some of the work performed by JEI has shown serious structural code violations on the first floor of the building. These serious structural code violations could lead to potential tenants being put in danger, and leaves in question the integrity of the building. Therefore, the questions and concerns of Peerless are not only about building code violations and poor quality workmanship of JEI, but are also regarding the safety of the families who move into the units in the 4-plex building.

R. Doc. 12-3 at 21-26. JEI alleges that it notified Burlington of the amended claims and again demanded coverage and a defense, but Burlington did not respond.

*b. The Arbitration Award*

In March of 2018, the Arbitrator ordered JEI to reimburse Peerless for "inadequate and incomplete work, as itemized and delineated on [Peerless's] Exhibit #18." R. Doc. 10-7. On March 30, 2018, JEI notified Burlington of the adverse judgment and demanded Burlington pay the award

and reimburse defense costs. On October 4, 2018, in response to follow-up correspondence from JEI, Burlington again denied coverage and defense. R. Doc. 12-2. This lawsuit followed. JEI seeks to recover from Burlington the arbitration award rendered in favor of Peerless, the cost of defense against Peerless's arbitration claims, and bad faith damages.

## II. PRESENT MOTION

Burlington now moves for judgment on the pleadings or summary judgment, arguing it has no duty to defend or indemnify JEI because Peerless's damages as alleged and awarded (i) do not constitute "property damage" caused by an "occurrence" under the Policy, or (ii) coverage is barred by the "Damage To Property" exclusion. In opposition, JEI contends that Peerless's arbitration award specifically mentioned property damage resulting from JEI's faulty workmanship, and that there is at least a question of fact as to whether certain exclusions are applicable.

## III. LAW AND ANALYSIS

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Rule 12(c) "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (citing *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990)).

A Rule 12(c) motion is governed by the same standard as a Rule 12(b)(6) motion. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Accordingly, a court must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party. A complaint must "contain sufficient factual matter, accepted as true, to state a claim to

relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. However, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.*

An insurer's duty to defend and duty to indemnify are separate and distinct obligations. *Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864 (5th Cir. 2009). The duty to defend is determined under the "eight corners" rule: the Court is constrained to the "four corners of the petition and the four corners of the policy," without consideration of extraneous evidence. *Louisiana Stadium & Exposition Dist. v. BFS Diversified Prod., LLC*, 49 So. 3d 49, 51 (La. App. 4 Cir. 2010). "While factual inquiries beyond the complaint are prohibited with respect to the duty to defend, they are indispensable in assessing the duty to indemnify." *Martco*, 588 F.3d at 872. Indeed, the Court "must apply the Policy to the actual evidence adduced at the underlying liability trial together with any evidence introduced in the coverage case." *Id.* at 877.

I.

Burlington's commercial general liability policy provides coverage for sums the insured becomes legally obligated to pay as damages because of "property damage" to which the insurance applies, if the "property damage" is caused by an "occurrence" and takes place during the policy period. R. Doc. 10-9 at 18. "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id*. at 31.

JEI's failure to perform the work called for in the contract does not constitute "property damage" caused by an "occurrence," and Burlington correctly notes that defects in construction, alone, do not trigger coverage under a CGL policy. However, "coverage is triggered … when that

4

defect causes physical injury to tangible property." 15 La. Civ. L. Treatise, Insurance Law & Practice §6:5, William Shelby McKenzie and H. Alston Johnson, III.[1] The Arbitrator awarded damages against JEI for "inadequate and incomplete work as itemized and delineated in [Peerless's] Exhibit #18." Exhibit 18 lists mainly the costs of repairing and replacing JEI's defective work, but specifically lists some "damage resulting from poor workmanship:"

- "Inside/outside walls show signs of water damage from roof leak"
- "Places where outsides can be seen from inside (moisture issue with drywall)"
- "Stud integrity weakened by excessive cutouts"

R. Doc. 12-2 at 151-55. Those constitute "property damage" caused by an "occurrence."

II.

Burlington next argues that coverage is barred by exclusions j(5) and j(6), which exclude:

**"Property damage" to:**

> **(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
>
> **(6)** That particular part of any property that must be restored, repaired or replaced because "your work"[2] was incorrectly performed on it.

---

[1] "If the roof leaks or the wall collapses, the resulting property damage triggers coverage under an 'occurrence' basis policy, even if the sole cause is improper construction and the only damage is to the work performed by the contractor." *Id., see also Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 879 (5th Cir. 2009) (noting that Louisiana courts have "directly addressed and rejected [the] proposition" that "no construction defect could ever constitute an 'occurrence' under a CGL policy") (citing *Rando v. Top Notch Props., LLC*, 879 So.2d 821, 833 (La. App. 4 Cir. 2004) ("[T]he clear weight of authority in more recent cases considers defects in construction that result in damage subsequent to completion to be 'accidents' and 'occurrences' when they manifest themselves"); *Iberia Parish School Board v. Sandifer & Son Const. Co.*, 721 So.3d 1021, 2024 (La. App. 3 Cir. 1998) ("The roof leaked allegedly because improper construction caused damage to it and made it leak … This allegedly improper construction causing damage to the roof triggered an 'occurrence.'").

[2] **22.** "Your work":

a. Means:

(1) Work operations performed by you *or on your behalf*; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

5

> …
>
> Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."
>
> **16. "Products-completed operations hazard" (PCOH):**
>
> a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
>
>   (1) Products that are still in your physical possession; or
>
>   (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:
>
>   (a) When all of the work called for in your contract has been completed.
>
>   (b) When all of the work to be done at the job site has been completed, if your contract calls for work at more than one job site.
>
>   (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
>
> Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

*Id.* at 32.

The "work product" exclusions "reflect[] the insurance company's intent to avoid the possibility that coverage under a CGL policy will be used to repair and replace the insured's defective products and faulty workmanship," and the Louisiana Supreme Court has consistently emphasized that "a CGL policy is not written to guarantee the quality of the insured's work or product." *Supreme Services & Specialty Co., Inc. v. Sonny Greer, Inc.*, 958 So. 2d 634, 641 (La. 2007).

Importantly, exclusions j(5) and j(6) apply only "while the insured's work is in progress, i.e., the work is not yet complete." *Id.* When the work is complete, the products completed

operations hazard (PCOH) provision provides coverage for property damage arising out of faulty work. The Louisiana Supreme Court has explained:

> Under the "work product" exclusion, the insured or its subcontractor becomes liable for damages to its work or its product caused by its faulty workmanship. Under the PCOH provision, damages, other than the faulty product or work itself, arising out of the faulty workmanship are covered by the policy.
>
> Stated differently, if a subcontractor's faulty electrical work caused the building to burn down before completion, the "work product" exclusion would eliminate coverage for the faulty electrical work performed by the contractor or subcontractor. However, the operations hazard coverage applies not to the faulty work, but damages arising out of the faulty work. Damage to real property arising out of the faulty work (fire damage) would not be excluded as it would be covered under the PCOH provision.

*Id.* The Arbitrator awarded Peerless damages "as itemized in Exhibit 18." That exhibit specifically references "damage resulting from poor workmanship:" "inside/outside walls show signs of water damage from roof leak;" "moisture issue with drywall," and "stud integrity weakened by excessive cutouts." R. Doc. 12-2 at 151-55. *See, e.g., Starr Surplus Lines Ins. Co. v. Banner Prop. Mgmt. Co.*, No. CV 18-5635, 2018 WL 6448840, at *8 (E.D. La. Dec. 10, 2018) (claims of water leakage causing "damage to cabinets" and "improper installation of the HVAC system" causing loosening of sheetrock material are "distinct property damage" resulting from homebuilder's faulty work and are not barred by work product exclusions).

If this damage occurred while JEI's work was ongoing, exclusions j(5) and j(6) bar coverage. But if the damage occurred after Peerless terminated the contract, they do not. The Court finds that there is a genuine question of fact as to when the covered property damage occurred and, therefore, whether coverage is barred by j(5) and j(6).

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that Burlington's Motion for Judgment on the Pleadings or Summary Judgment, R. Doc. 10, is hereby **DENIED**.

New Orleans, Louisiana, this 4th day of June, 2019.

_____
UNITED STATES DISTRICT COURT JUDGE